# United States Court of Appeals
## For the First Circuit

---

No. 23-1476

ROBERT NIGHTINGALE, on behalf of himself and
all others similarly situated,

Plaintiff, Appellant,

v.

NATIONAL GRID USA SERVICE COMPANY, INC;
FIRST CONTACT LLC; iQOR US INC.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Kayatta, Lipez, and Gelpí
Circuit Judges.

---

Stephen Taylor, with whom Sergei Lemberg, Joshua Markovits,
and Lemberg Law LLC were on brief, for appellant.
David G. Thomas, with whom Angela Bunnell and Greenberg
Traurig, LLP were on brief, for appellees.

---

July 9, 2024

---

**KAYATTA**, <u>Circuit Judge</u>.  Robert Nightingale owed money to National Grid.  National Grid hired two debt collectors to convince him to make good on the debt.  The debt collectors called Nightingale more than twice over each of several seven-day periods throughout 2017 and 2018.  This kind of badgering is unlawful under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("chapter 93A").

Nightingale sued National Grid and the debt collectors (collectively "Defendants") in state court under chapter 93A.  He alleged that the calls invaded his privacy and caused him emotional distress.  Nightingale also sought to certify a putative class of Massachusetts residents whose privacy had been invaded by similarly excessive calls on behalf of National Grid.  Defendants removed to federal district court.  The district court declined to certify a class, holding that the putative class did not comport with the predominance requirement of Federal Rule of Civil Procedure 23(b)(3).  The district court thereafter granted summary judgment to Defendants, finding that Nightingale had not demonstrated a cognizable injury under chapter 93A.

We hold that Nightingale alleged cognizable injuries. We therefore vacate the district court's grant of summary judgment. Moreover, because the district court's injury analysis underpinned its denial of class certification, we vacate that denial and remand

for further proceedings consistent with this opinion. Our reasoning follows.

## I.

### A.

Nightingale bought his gas and electricity from National Grid. He last recalls paying National Grid in or around November 2017. After that, he ran into financial difficulties and stopped paying. In response, National Grid hired two debt collectors -- First Contact and iQor -- to call Nightingale and solicit payment. During 2017 and 2018, Nightingale repeatedly received more than two calls from the collectors over each of several seven-day periods.

Nightingale answered the debt collection calls "[p]robably three or four times." When he did answer the phone, he simply asked the debt collectors to stop calling. The calls did not otherwise alter his daily routine. Nevertheless, Nightingale found the calls "frustrat[ing]" and akin to "harass[ment]." He found the calls especially upsetting because they arrived close on the heels of his son's death. He did not seek medical treatment for emotional distress, and the calls did not cost him any money.[1]

---

[1] Nightingale speculated that the calls may have indirectly cost him money by tying up his phone line and making it harder for prospective clients to reach him. But he did not provide any

**B.**

In October 2018, Nightingale sued Defendants in state court on behalf of himself and a putative class of Massachusetts consumers. He alleged that the repeated debt collection calls had caused him emotional distress, deprived him of the use of his phone, and invaded his privacy.[2] With respect to the class, he advanced only the phone deprivation and privacy-related theories of injury.[3] Defendants removed to federal district court, and then moved for summary judgment in October 2022.

Two months later, before the court ruled on the summary judgment motion, Nightingale filed a motion to certify his proposed class under Rule 23(b)(3). To support the class certification motion, Nightingale offered call records maintained by both First Contact and iQor. Each set of call records corresponded to a specific "call campaign." For example, a call campaign might target National Grid customers that were more than $2,500 in arrears. Within each campaign, First Contact and iQor logged the

---

evidence for this assertion, and we can identify none in the record.

[2] The district court concluded that the phone deprivation injury was not cognizable, and Nightingale does not challenge that decision here. So, when evaluating Nightingale's individual claims, we focus only on the emotional distress and privacy-related injuries.

[3] Nightingale likewise does not press his phone deprivation theory of class-wide injury here. Instead, he focuses exclusively on the privacy-related theory. We follow suit.

date and time for each call, as well as "disposition codes" describing each call's outcome.  For instance, a code of "RIGHT PARTY" would mean successful contact with the debtor, while "CPMACHINE" would mean the caller connected to an answering machine and then hung up.

Nightingale argued that these records could both identify class members and demonstrate a common injury (i.e., receipt of excessive collection calls) affecting the entire class. He therefore moved to certify the following class and sub-class:

> Main Class
>
> All persons residing in the Commonwealth of Massachusetts [as to whom], within four years prior to the filing of this action, Defendants initiated in-excess of two telephone calls regarding a debt within a seven-day period to their residence, cellular telephone, or other provided telephone number.
>
> Sub-Class
>
> All persons residing in the Commonwealth of Massachusetts [as to whom], within four years prior to the filing of this action, Defendants initiated in-excess of two telephone calls regarding a debt within a seven-day period to their residence, cellular telephone, or other provided telephone number pursuant to Program Codes          NGR.USUT.FE.NER1BO          or NGR.USUT.FE.NER5BO.[4]

---

[4]  The program codes here refer to National Grid customers that are, respectively, "in debt for 180 days or greater" and "in debt for 91-120 days."

The court denied class certification. It held that Nightingale's alleged class-wide privacy-related injury was effectively a class-wide claim for intrusion upon seclusion, which requires that a privacy invasion be substantial and unreasonable. The court further concluded that determining whether the debt collection calls substantially intruded upon a given debtor's privacy would require an individualized, fact-specific inquiry. Therefore, individual factual issues would predominate over common factual issues, a gap that Nightingale's proffered call records could not bridge.

Turning next to the merits of Nightingale's individual claims, the district court granted summary judgment to Defendants. It found that Nightingale (1) could not demonstrate an emotional distress injury under chapter 93A without satisfying the common-law elements of intentional infliction of emotional distress, and (2) could not demonstrate a privacy-related injury under chapter 93A without satisfying the common-law elements of intrusion upon seclusion. Finally, it held that no reasonable juror could conclude that Nightingale had satisfied the elements of either tort.

Nightingale timely appealed both orders.

## II.

We begin with the grant of summary judgment. Summary judgment is appropriate if there is no genuine dispute of material

fact, and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  We review a grant of summary judgment de novo, examining the record in the light most favorable to the non-moving party (here, Nightingale).  In re Kupperstein, 61 F.4th 1, 6–7 (1st Cir. 2023).

To review the district court's summary judgment order, we must apply the text and implementing regulations of chapter 93A. Our analysis revolves around sections 2 and 9 of that statute. Section 2 broadly proscribes "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  A debt collector violates section 2 by "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period." 940 Mass. Code Regs. § 7.04(1)(f).

Section 9, in turn, creates a private cause of action for any consumer that "has been injured" by an act or practice barred by section 2.  Mass. Gen. Laws ch. 93A, § 9(1).  Section 9 encompasses economic injuries, as well as non-economic injuries like emotional distress.  Hershenow v. Enterprise Rent-A-Car Co. of Bos., 840 N.E.2d 526, 532–33 & n.16 (Mass. 2006).  There is, however, no "per se" liability under section 9 of chapter 93A. See Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745–46 (Mass. 2013).  In other words, a mere violation of section 2 does not

automatically give rise to an actionable injury under section 9. Instead, the plaintiff must identify a "distinct injury or harm," either economic or non-economic, "that arises from the claimed unfair or deceptive act itself." Id. at 746.

### A.

The heart of the district court's summary judgment order was its injury analysis, which Defendants embrace on appeal. In essence, the district court concluded that cognizable injury under chapter 93A extends no further than injury actionable at common law, and that Nightingale had not produced sufficient evidence to prove actionable injury at common law. We cannot endorse this approach.

First, as a general matter, Massachusetts law clearly rejects the broad assertion that the elements of a chapter 93A claim must track those of analogous common-law claims. In Slaney v. Westwood Auto, Inc., a plaintiff sued under chapter 93A, alleging that an automobile dealership had failed to disclose defects in a car he bought. 322 N.E.2d 768, 771 (Mass. 1975). The Massachusetts Supreme Judicial Court found that the plaintiff did not need to prove actual reliance on the dealer's alleged misrepresentations, because there was a difference between a "[chapter] 93A cause of action [and] a common-law action for deceit and fraud." Hershenow, 840 N.E.2d at 534 n.20 (citing Slaney, 322 N.E.2d at 779); see also Slaney, 322 N.E.2d at 779 ("[T]he

definition of an actionable 'unfair or deceptive act or practice' goes far beyond the scope of the common law action for fraud and deceit."). Put simply, <u>Slaney</u> made clear that injury under chapter 93 is not coextensive with injury at common law.

Second, chapter 93A's treatment of emotional damages undermines the suggestion that such damages are only available when the defendant's unlawful conduct satisfies the elements of intentional infliction of emotional distress. As already noted, section 9(1) permits an action for "damages" by any person "who has been injured by . . . any method, act or practice declared to be unlawful by section [2]." Mass Gen. Laws ch. 93A, § 9(1). Section 9(3), in turn, authorizes up to treble damages in cases of "willful or knowing" or "bad faith" violations. <u>Id.</u> §§ 9(3)-(3A). This bifurcated remedial structure shows that baseline emotional damages are still available when the defendant's violation of chapter 93A is not intentional. A showing of intentionality simply entitles the plaintiff to treble damages.

Finally, even if we assume that the scope of compensable injury at common law should inform our interpretation of chapter 93A, Defendants' position is still untenable. Again, we can use emotional distress as an example. The common law does not limit the recovery of emotional distress damages to cases in which the defendant intended that distress. <u>See, e.g.</u>, 86 C.J.S. <u>Torts</u> § 55 (2024) ("A plaintiff may recover damages for emotional

distress . . . where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress"). Rather, damages for emotional distress are routinely recoverable in actions where the defendant otherwise breaches a legal duty to the plaintiff. These can range from intentional tort actions, see 1 Mass. Proof of Cases Civil § 13:2 (2023) (collecting emotional damage awards in intentional tort cases), to actions for negligent operation of a motor vehicle, see Dziokonski v. Babineau, 380 N.E.2d 1295, 1303 (Mass. 1978).

Of course, the common law may -- in some cases -- foreclose recovery for negligible emotional distress unaccompanied by any physical manifestation. For instance, a Massachusetts plaintiff cannot recover for negligent infliction of emotional distress without showing "physical harm manifested by objective symptomatology." Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982). But by providing for $25 nominal damages under chapter 93A, Massachusetts clearly opted to provide a remedy not uniformly available at common law. See Mass Gen. Laws ch. 93A, § 9(3).

The only authority Defendants cite to support their more constrained theory of chapter 93A injury is Haddad v. Gonzalez, 576 N.E.2d 658 (Mass. 1991).[5] Haddad involved a chapter 93A claim and a separate claim for intentional infliction of emotional

---

[5] Defendants also cite several federal district court cases that relied on Haddad.

distress. Id. at 659. But that case did not say that a plaintiff must prove the elements of intentional infliction of emotional distress to recover emotional damages under chapter 93A. Instead, Haddad held that if a plaintiff has already demonstrated the elements of intentional infliction of emotional distress, then the plaintiff may -- in certain circumstances -- use chapter 93A as a vehicle for obtaining treble damages. Id. at 664-68.

Indeed, Massachusetts's intermediate appellate court has rejected the argument that Haddad imported the elements of intentional infliction of emotional distress into section 9 of chapter 93A. See Wilson v. Transworld Sys., Inc., No. 13-P-1455, 2014 WL 4187532, at *3 n.4 (Mass. App. Ct. Aug. 26, 2014) ("The Haddad plaintiff explicitly claimed intentional infliction of emotional distress. Recent cases . . . suggest a more permissive approach to injury for purposes of [chapter] 93A."). And this makes sense, given the clear mismatches between the two causes of action. For example, while emotional injury under chapter 93A "need not be severe," id. at *3, a claim for intentional infliction of emotional distress requires "severe" distress, Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014).

In sum, the district court erred when it concluded that Nightingale could not prove a cognizable injury under section 9 of chapter 93A without satisfying the elements of analogous common-law torts.

**B.**

Defendants insist that they can win even without their more constrained theory of injury.  They argue that even under a more generous standard, Nightingale has failed to allege a cognizable injury.  We disagree.

**1.**

As an initial matter, Defendants argue that both of Nightingale's theories of injury are impermissible "per se theories."  Recall that there is no per se liability under section 9 of chapter 93A, because a section 9 injury must be "distinct . . . from the claimed unfair or deceptive act itself." Tyler, 984 N.E.2d at 746.  A plaintiff cannot claim injury under section 9 merely by pointing to a violation of section 2.  But according to Defendants, that is precisely what Nightingale is doing here.  In their view, section 2 was only violated when Nightingale received the unwanted debt collection calls. Therefore, Nightingale cannot claim that receipt of the unwanted calls was also his injury under section 9.

This argument rests on a flawed premise.  The section 2 violation did not occur when Nightingale received the excessive calls.  It occurred when Defendants initiated them.  The plain text of the applicable regulation makes this clear.  Under Massachusetts law, a debt collector violates section 2 when it "[i]nitiat[es] a communication with any debtor via

telephone . . . in excess of two such communications in each seven-day period." See 940 Mass. Code Regs. § 7.04(1)(f) (emphasis added).  According to the Supreme Judicial Court, a debt collector "initiates" a communication "every time it attempts to contact a debtor's telephone to convey information." Armata v. Target Corp., 99 N.E.3d 788, 793 (Mass. 2018).

To be sure, as Defendants point out, the Armata court acknowledged the Massachusetts Attorney General's guidance that "unsuccessful attempts . . . to reach a debtor via telephone may not constitute initiation of communication if the creditor is truly unable to reach the debtor or leave a message for the debtor." Id. at 792 (emphasis added) (quoting Off. of the Mass. Att. Gen., Guidance with Respect to Debt Collection Regulations (2013), https://perma.cc/V4Q8-Y39E).  For instance, the court noted that a collector does not "initiate" a communication within the meaning of the regulation if the debtor "do[es] not answer and [his] voicemail or answering system is not set up." Id. at 793. Defendants seize on this language:  If "initiation" of a call does not occur when the caller is "unable" to reach the debtor, then initiation is not distinct from the section 9 injury of receipt. Rather, initiation requires receipt. So, in Defendants' view, the section 2 violation is not distinct from the section 9 injury at all.

But the Attorney General's guidance does not entirely (or even mostly) eliminate the distinction between initiation and receipt. Even under that guidance, there are many circumstances in which a collector can unlawfully "initiate" a call without causing an injury (i.e., receipt) under section 9. All that matters is that the debtor be "able to" receive the call, even if he ultimately does not. Id. at 793-94. For example, a caller could opt out of leaving a voicemail, even though it is possible to do so. Id. at 796 n.14 ("The Attorney General's guidance provides no exemption for those who voluntarily choose not to leave voicemail messages."). Or a caller could leave a voicemail that the debtor never listens to. In either case, the collector has still "initiated" an unlawful call. But the collector has not caused any injury, because the call was never received. The section 2 violation can therefore exist without a corresponding section 9 injury.

More broadly, we do not read Tyler as rejecting the possibility that injury can play a dual role, serving as both an element of a violation and a basis for seeking redress for that violation. For example, civil battery in Massachusetts requires an "intentional touching 'that [is] offensive to the victim.'" Gallagher v. South Shore Hosp., 197 N.E.3d 885, 911 (Mass. App. Ct. 2022) (quoting Commonwealth v. Cohen, 771 N.E.2d 176, 178 (Mass. App. Ct. 2002)). Thus, in a battery action, offensive

physical contact is both an element of the claim and the injury that permits the plaintiff to seek redress.  The plaintiff's injury flows inexorably from the underlying tortious conduct.  By the same token, we do not read Tyler to say that there is no chapter 93A liability in cases where a section 2 violation inexorably causes a section 9 injury, such as when a call is only "initiated" upon the debtor's decision to answer it.  Rather, we read Tyler as holding that no liability attaches in cases where a bare section 2 violation causes no injury at all, such as when the debtor does not know about the unlawful call in the first place.  So, even if Defendants were correct (and they are not) that an excessive call is only "initiated" when it is "received," their argument would still fail.  The mere fact that many calls initiated in violation of section 2 inexorably cause a section 9 injury does not strip debtors who receive these unwelcome calls of any recourse under chapter 93A.

        We therefore conclude that Nightingale has alleged more than a per se theory of liability.  That, though, is not the end of our business.  The fact that Nightingale's alleged injuries are distinct from Defendants' section 2 violation does not necessarily render those injuries cognizable.  To determine whether the injuries are cognizable, we must examine each theory of injury -- invasion of privacy and emotional distress -- in turn.

**2.**

In Tyler, a merchant unlawfully recorded a consumer's personal identification information (i.e., her zip code), used that information "in conjunction with other commercially[ ]available databases to find her address and telephone number," and then sent her "unsolicited and unwanted marketing materials." 984 N.E.2d at 739. The merchant's unlawful recording of the consumer's zip code violated section 2 of chapter 93A. Id. at 740. And the merchant's subsequent mailing of marketing materials to the plaintiff caused an injury under section 9, because "receipt of unwanted marketing material as a result of [unlawful recording of personal identification information] represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny." Id. at 746 n.20. Accordingly, the plaintiff had alleged a cognizable injury under section 9.

The logic from Tyler applies here. Defendants initiated excessive debt collection calls, which violated section 2. See 940 Mass. Code Regs. § 7.04(1)(f). The parties agree that Nightingale received some of those unlawful calls. And like Tyler's receipt of unwanted marketing materials, Nightingale's receipt of the calls was an "invasion of [his] personal privacy causing injury or harm worth more than a penny." 984 N.E.2d at

746 n.20.   So, Nightingale has also established a cognizable privacy-related injury under section 9.

Defendants offer three unconvincing rejoinders.

First, they reiterate the argument that Nightingale advances an impermissible per se theory of injury.  We have already discussed why that argument fails.

Second, Defendants argue that Nightingale has not shown an appreciable or significant invasion of privacy.  For instance, Nightingale rarely picked up the calls, and did not allege that the calls disrupted his routine in any way.  But this argument again ignores Tyler.  That case made clear that mere receipt of unwanted communications causes a cognizable privacy-related injury under section 9, assuming such receipt stems from a section 2 violation.  See id. at 746 n.20.  To be sure, if Nightingale could produce additional facts showing that the calls severely invaded his privacy, then he might be entitled to something more than nominal damages.  But under Massachusetts law, which we must apply, this added severity would only affect the size of Nightingale's award, not his entitlement to one in the first place.

Third, Defendants argue that because Nightingale is a debtor, he has a reduced privacy interest under Massachusetts law. True enough.  See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 N.E.2d 912, 915 n.6 (Mass. 1991) (noting that a debtor "knows that [a] creditor may take action to collect the

debt and thus has a lower expectation of privacy than [a] person who receives unsolicited [sales] calls"). But the regulation against excessive debt collection calls balances any diminished privacy interest against Nightingale's right to be free from creditor harassment. That is why creditors may call him twice every seven days, but no more. See 940 Mass. Code Regs. § 7.04(1)(f). Once Nightingale receives excessive collection calls, the caller has caused a privacy-related injury under section 9. Nightingale's reduced privacy interest is not a get-out-of-jail-free card that allows debt collectors to violate chapter 93A with impunity.

We therefore find that Nightingale has demonstrated a cognizable privacy-related injury under section 9 for purposes of summary judgment. The district court's contrary conclusion was legal error.

**3.**

Nightingale also claims injury in the form of emotional distress. In his deposition testimony, Nightingale broadly averred that he found the repeated debt collection calls "frustrat[ing]" and "harassing." Defendants argue that Nightingale did not state a cognizable emotional distress injury, because he did not allege "measurable emotional distress." In other words, Defendants seem to suggest that an emotional distress injury is not cognizable under chapter 93A without "corroborating

testimony or medical or psychological evidence concerning the manifestations of [Nightingale's] alleged emotional distress."

We disagree. Defendants identify no Massachusetts case law suggesting that emotional injuries must be "measurable" to be cognizable under chapter 93A. Defendants point only to Tyler's statement that it "seem[ed] unlikely" that the merchant's unlawful conduct in that case caused the plaintiff "measurable emotional distress." 984 N.E.2d at 746 n.20. But the Tyler court was discussing damages, not liability. That is, the court said that an emotional injury must be "measurable" before a plaintiff can receive actual damages, rather than a statutory nominal damages award of $25. Id. (citing Mass. Gen. Laws ch. 93A, § 9(3)). It never said that an emotional injury must be "measurable" to be cognizable in the first place.

On the contrary, under both Tyler and its progeny, an injury can be cognizable under chapter 93A even if it is not measurable for damages purposes. See Hershenow, 840 N.E.2d at 533 n.18 (noting that chapter 93A's option of $25 nominal damages "eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act") (emphasis added); cf. Tyler, 984 N.E.2d at 746 n.20 (awarding nominal damages for invasion of privacy, because even though the plaintiff's underlying injury was not "measurable," it was nevertheless "worth more than a penny").

- 19 -

Other Massachusetts case law also cuts against Defendants' position.  The Massachusetts Appeals Court's decision in Wilson is instructive.  That case involved repeated debt collection calls, which the plaintiff only answered a "few times." 2014 WL 4187532, at *1.  The plaintiff testified that the calls caused her emotional distress, because they were "aggressive," "threatening," and "intimidat[ing]."  Id. at *4.  The court first noted that an emotional distress injury under chapter 93A need not be "easily quantified."  Id. at *3.  It then found that the plaintiff's testimony that she felt "intimidated" by the collection caller was "sufficient to support a finding that each call [the plaintiff] received from [the defendant] . . . caused [the plaintiff] emotional distress."  Id. at *4.  Thus, Wilson stands for the proposition that emotional injury is cognizable under chapter 93A even if it is not "easily quantified" or corroborated by evidence other than the plaintiff's testimony.

Defendants try to distinguish Wilson.  But they offer little more than superficial factual distinctions between Wilson and this case, such as the fact that the debt collector in Wilson spoke in a "threatening" manner and called from anonymous numbers. Id. at *2-4.  Defendants never explain how their proposed rule -- that a chapter 93A plaintiff must, via corroborating evidence, show a "measurable" manifestation of emotional injury -- is consistent with Wilson's statements that a chapter 93A emotional

injury need not be "easily quantified" and can rest entirely on the plaintiff's own testimony. Id. at *3-4.

To be sure, there are other circumstances in which a claim for emotional injury will require corroborating evidence beyond the plaintiff's testimony. Again, under Massachusetts tort law, a plaintiff cannot recover for mere negligent infliction of emotional distress without showing "physical harm manifested by objective symptomatology." Payton, 437 N.E.2d at 181. But there is nothing in either the statutory text or Massachusetts case law to suggest that such a showing must be made to recover damages under chapter 93A. Indeed, the provision for nominal damages of $25 recognizes that chapter 93A damages will often be small and hard to measure.

We therefore find that Nightingale stated a cognizable emotional distress injury under chapter 93A for purposes of summary judgment.[6]

---

[6] Defendants also suggest that Nightingale had to present expert testimony to show that the excessive calls caused his "increased levels of stress." But we doubt that a jury would require medical expert testimony to reasonably infer the causal relationship between persistent and excessive debt collection calls and Nightingale's feelings of "harass[ment]" and "stalking." Cf. Cady v. Marcella, 729 N.E.2d 1125, 1132 (Mass. App. Ct. 2000) (holding that jury did not require a medical expert to explain the self-evident connection between plaintiffs' loss of half their house and the resulting physical symptoms of emotional distress).

**C.**

In summary, we find that Nightingale (1) did not advance an impermissible per se theory of injury under chapter 93A; (2) offered proof of cognizable privacy-related injuries under section 9 of chapter 93A; and (3) offered proof of cognizable emotional distress injuries under section 9 of chapter 93A. We therefore vacate the district court's grant of summary judgment to Defendants.

**III.**

We now proceed to the district court's denial of class certification. We review class certification orders for abuse of discretion. In re Asacol Antitrust Litig., 907 F.3d 42, 51 (1st Cir. 2018). A district court abuses its discretion when it "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 37 (1st Cir. 2003). A district court also abuses its discretion when it "adopts an incorrect legal rule." Id.

To obtain class certification under Rule 23(b)(3), a plaintiff must show, among other things, that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement is called the "predominance" requirement. The predominance inquiry tests whether the court can deal with

dissimilar class member claims in a manner that is not "inefficient or unfair." In re Asacol Antitrust Litig., 907 F.3d at 51 (citing Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009)). As we have explained:

> Inefficiency can be pictured as a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues. Unfairness is equally well pictured as an attempt to eliminate inefficiency by presuming to do away with the rights a party would customarily have to raise plausible individual challenges on those issues.

Id. at 51-52.

Here, the district court denied class certification on predominance grounds. Specifically, the court found that even if Nightingale's submitted call logs could prove that Defendants called each class member too many times, they could not prove that the resultant privacy violations rose to the level of intrusion upon seclusion, which requires an "unreasonable and substantial or serious" invasion of the plaintiff's privacy. See Polay, 10 N.E.3d at 1126. Thus, individualized factual inquiries into the severity of the intrusions on each class member's privacy would predominate over common issues, rendering class certification inappropriate.

As our preceding discussion explains, the district court's analysis rested on an "incorrect legal rule." Smilow, 323 F.3d at 37. The district court assumed that each class member would need to demonstrate the elements of intrusion upon seclusion

to establish liability.  That is not the case.  Under <u>Tyler</u>, mere receipt of the unwanted debt collection calls would constitute a cognizable invasion of privacy under section 9.  984 N.E.2d at 746 n.20.  Thus, Nightingale's submitted call logs -- which purport to demonstrate when a class member was called, how many times they were called, and (importantly) the outcomes of those calls -- might serve as "common proof" that Defendants invaded each class member's privacy.

Whether that is so, we need not -- and do not -- decide here.  For now, it is enough to vacate the denial of class certification, and to remand to the district court for (1) further fact-finding on the sufficiency of the call records as "common proof" of class-wide legal and factual issues; and (2) consideration of any remaining class certification factors, including the core certification requirements of Rule 23(a) and the remaining requirements of Rule 23(b)(3).

### IV.

For the foregoing reasons, the district court's grant of summary judgment to Defendants is <u>vacated</u>.  The district court's denial of class certification is also <u>vacated</u>, and the case is <u>remanded</u> for further proceedings consistent with this opinion. The parties shall bear their own costs.